Wilkin, J.
The matter we have to deal with belongs to the realm of Public Law. We have not now to decide a conflict between individual members of society, nor to determine the status and legal relations of legal bodies or social groups within the state, nor to regulate the affairs of mere official administration. We have to define a branch of the law of the being of the state itself. Our inquiry is, therefore, not hampered by scruples about “the inherent and inalienable rights and liberties of persons.” The contention is between citizens of the state and the state itself, *477 and the question is whether its constitutional system of legislation is about to be perverted in the particulars complained of.
We have to conceive first what the initiative is; ;what is the nature and mode -of operation of the Ohio type of this political device. And we are to get our conception of it, not from our intuitions of what it ought to be, but from what the people have declared it to be, in Article II of the Charter of State, particularly in Sections 1 to lg. Next we have to conceive the principle which is involved in the mechanism, from the nature and function of it as an organ of government; and then, third, consider for what purpose the architects of our form of government devised this method of legislation for the state.
When we have a true and definite conception of the kind of direct legislation which this amendment has grafted upon the old style of indirect legislation, we need not stick in the shell of words by which this dual method is described in the document. Having determined the nature and purpose of this part of the machinery of government, we have only to interpret the verbal account of its operation so as to effect that purpose according to the essential nature of the thing. We extract the pertinent parts of the constitution as revised:
“Article II.
“Sec. 1. The legislative power of the state shall be vested in a general assembly * * * but the people reserve to themselves the power to propose to the general assembly laws * * * *478 and to adopt or reject the same at the polls. * * * They also reserve the power to adopt or reject any law, * * * passed by the general assembly, except * * *.
“Sec. la. The first aforestated power reserved by the people is designated the initiative *■ * *.
“Sec. lb. When * * * not less than ten days prior to the commencement of any session of the general assembly, there shall have been filed with the secretary of state a petition * * * proposing a law, * * * the secretary of state shall transmit the same to the general assembly as soon as it convenes.
“[Clause 2.] If said proposed law shall be passed by the general assembly, either as petitioned for or in an amended form, it shall be subject to the referendum.
“[Clause 3.] If it shall not be passed, or if it shall be passed in an amended form, or if no action shall be taken thereon * * * it shall be submitted by the secretary of state to the electors for their approval or rejection at the next regular or general election, if such submission shall be demanded by supplementary petition verified * * * and signed * * *.
“[Clause 4.] The proposed law shall be submitted in the form demanded by such supplementary petition, which form shall be either as first petitioned for or with any amendment or amendments which may have been incorporated therein by either branch or by both branches of the general assembly.
“Sec. 16. * * * Every bill passed by the general assembly shall, before it becomes a law, *479 be presented to the governor for his approval. If he approves, he shall sign it, and thereupon it shall become a law and be filed with the secretary of state.
“Sec. lc. The second aforestated power reserved by the people is designated the referendum * * *
“[Clause 2.] No law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except * * *.
“[Clause 3.] When a petition, signed * * * and verified * * * shall have been filed with the secretary of state within ninety days after any law shall have been filed by the governor in the office of the secretary of state, ordering that such lazv * * * be submitted to the electors of the state for their approval or rejection, the secretary of state shall submit to the electors of the state for their approval or rejection such law * * *.
“Sec. lg. Any initiative, supplementary or referendum petition may be presented * * * shall contain * . * * the law * * * sought to be referred, or the proposed law * * *.
“[Clause 9.] Upon all initiative, supplementary and referendum petitions * * *.
“[Clause 11.] * * * persons who prepare the argument * * * against any law submitted * * * by referendum petition * * * and the persons who prepare the argument * * * for any proposed law * * * may be named in the petition * * *.
“[Clause 12.] * * * persons who prepare the argument * * * ' for the law * * * *480 submitted * * * by referendum petition, or against any proposed law submitted by s%ipplementary petition, shall be named by the general assembly * * *.
“[Clause 16.] The style of all laws submitted by the initiative and supplementary petition shall be: ‘Be it Enacted by The People of the State of Ohio/ ”
Be it observed that these excerpts provide for three stages of a statutory law, and for three sorts of petition.
The old constitution provided for indirect legislation by a representative assembly of citizens chosen for that function. The original idea of direct legislation by initiative and referendum was, to proceed at once to the people with a proposal that they ordain a law set forth in the proposal, or to repeal a law therein set forth already enacted by the legislature. The Ohio plan, embodied in the amendment of Article II, Sections 1 to lg, is an amalgamation of the direct and indirect methods.
A proposed law is first initiated by a petition filed with the secretary of state, who transmits it to the general assembly (if the petition be properly signed and verified), where it is introduced as a bill; if both bodies adopt and pass it as proposed it becomes an act, and when it is enrolled and filed by the governor with the secretary of state it becomes a law, but subject for ninety days to the referendum, which means that it may be referred to the people for their approval or rejecr tion at the next general election. If a referendum be not taken within ninety days after the law is *481 filed with the secretary of state, the law stands. If a referendum be called and the law be approved by the electors, then it goes into effect at once, but if it be rejected, it becomes a nullity.
Now, going back to the time the bill is pending before the legislature, either house may amend the bill and both houses may pass it as amended; then it becomes a lazu subject to the referendum as aforesaid. But at this stage it is also subject to the second initiative; that is, it may be treated, not as a law, but as a proposed law, in either of two respects—it may be considered in its amended form as a law proposed by the legislature, or the amendments may be disregarded and the original proposal may be taken up. In either form it may be presented the second time to the secretary of state by a siipplemental petition (properly signed and verified), and he shall submit it to the electors of the state for approval or rejection.
So far we have considered two contingencies —the original bill passed and the bill amended and passed, by the general assembly. But a third contingency may arise, namely, the bill may not be passed in any form, by the general assembly (both branches). In this contingency the bill in its original form or in its amended form .may be initiated the second time by supplemental petition and submitted directly to the people as aforesaid. We have now considered all contingencies that clearly seem to be provided for by the second and third clauses of Section lb.
It will be observed these clauses mention only what may be done or not done to the proposed law *482 by the general assembly. Whether that phrase must be taken in its collective sense, as including both houses in the contemplation of both clauses where amendment of the law is mentioned, we do not find it necessary to consider now. In this case the only amendments asserted are those alleged to have been made by the lower house; and the fourth clause, on which both sides of the controversy rest their claims, provides for “amendments which have been incorporated [in the bill] by either branch or by both branches of the general assembly.” It is perfectly manifest, therefore, that one purpose of this revision of Article II is to give either or both branches of the legislature a chance to consider a proposed law, and to propose amendments to it, before it is submitted to the people by the initiative or the referendum. When the amendments are incorporated by either house, they are submitted by the second initiative. When the amendments are incorporated and the. law is passed by both houses, the bill thus amended may be submitted by the referendum. In the latter case they have been made a part of the law passed by the general assembly and must be referred with it (Section lc and clause 2 of Section 1&). In the former case (the initiative), they may. or may not be submitted, at the option of the supplementary petitioners.
Now we come to the precise question in controversy: Were these amendments “incorporated” in this proposed law by the lower house where it was introduced' as house bill No. 3?
That the amendments reported by the committee to which the bill was referred were agreed to by *483 the house, must be taken as a fact established by the house journal, plaintiffs’ subtle argument to the contrary notwithstanding. But plaintiffs’ main contention is that this fact does not “incorporate” the amendments in the proposed law, because the bill was not passed by the house.
Their argument, substantially in their own language, runs thus: “The philosophy of the agreement to the committee .amendments is, that if (as) the committee has amended the bill, the house chooses to proceed to the consideration of the measure as amended rather than to debate the bill as originally proposed * * *. ‘Incorporate’ means ‘to place in a body; to embody.’ (Cent. Die.)- The house never having passed the bill itself, it (the house) cannot be said to have embodied the amendments in the bill.” The gist of this bit of ratiocination is this: I. The committee amended the bill, the house did not, therefore the house did not embody the amendments in the bill. II. The house amends a bill only by passing it. The house did not pass it, hence did not amend it.
Let’ us test these propositions. Are they true? The plaintiffs refer us to Robert’s Rules as the parliamentary law of the assembly. One of them, rule 31, “Adoption of Reports,” reads thus: “When the Assembly is to consider a report, * * * a motion should be made to ‘adopt,’ ‘accept,’ or ‘agree to’ the report, all of which, when carried, * * * make the doings of the committee become the acts of the assembly, the same as if done by the assembly without the intervention of a committee.” Then the amend *484 ments reported by the committee, having been adopted by the committee, became adopted by the assembly when the assembly “agreed to” them. Therefore proposition I is not true, unless “to embody” amendments in a bill means something else than adopting amendments to the bill—which is absurd.
In support of proposition II the plaintiffs cite house rule 67: “When a bill has passed the house, tlie clerk shall read its title, substituting the word ‘act’ for the word ‘bill.’ ” Upon this rule they make this comment: “When the bill has passed, it is an act and not before.” Certainly, a bill passed to an act is a bill passed. But this does not prove that a bill may not be amended before it is passed. Hence their conclusion that this, bill was not amended because it was not passed, is also without logical Sequence.
Counsel for plaintiffs further ' say: “The phraseology ‘the amendments were agreed to’ was not intended by the house to be an incorporation of the committee amendments in the bill in any ‘final sense.’ ” This court can not find upon the record that the legislature’s last action on the bill, adopting these amendments,’was attended with a mental reservation that they were not adopted in a “final sense.” The house has left no hint that it contemplated further action. But if so, the Constitution, fourth clause of Section lb, does not require the amendments to be incorporated finally in the bill. This would be contrary to the reason as'well as to the text of this revision. The purpose plainly is that proposed amendments may be submitted to the people, whether they *485 are adopted in the proposed law finally or only provisionally, in order to have them discussed and to take the sense of the house upon them. The plain language is that the initiated law may be submitted to the people with or without changes' proposed by the legislature. The Ohio plan of the initiative is, first to submit the proposal to the body especially delegated to make laws, in order to have the benefit of its knowledge, experience and discussion before the proposal is directly passed upon by the people. There seems •to be no reason why the changes proposed by the legislature should be excluded from the submission because the bill was not passed by the house with the modifications which it wrote into them; on the contrary, there are plausible, good reasons why proposals made by the legislative department of government should be submitted to the people along with the proposals made by the petitioners.
Now observe the text, clause 4: “The proposed law shall be submitted in the form demanded
* * * which form shall be either as first petitioned for or with any amendment or amendments * * * incorporated therein by either branch or by both branches of the general assembly.” Clause 3: “If it shall not be passed, or if it shall be passed in an amended form, or if no action shall be taken thereon * * * it shall be submitted,” etc.
Does “thereon” refer to • the original and not to the amended form? If it refers to the amended form, and if no action be taken on the amended form (which is precisely the case at bar), then *486 that form may be submitted. But plaintiffs say it cannot be submitted, just because no action was taken on it. They contradict the document' itself.
The plaintiffs’ ■ last proposition in argument is that “the amendment [to the constitution] demonstrates * * * that much more was intended than a mere suggestion or tentative adoption of change in the form of the originally initiated law.” That is the very conclusion to which they should have brought the mind of the court. We have considered the reasons which they have given in their brief to bring us to that conclusion, and we have found them invalid or insufficient.
■ The decision hangs upon the construction of a power. The power is defined in Section 1 of Article' II, thus: “The legislative power of the state shall be vested in a general assembly * * * but the people reserve to themselves the power to propose to the general assembly laws * * * and to adopt or reject the same at the polls.” The first named is a delegated power —from the people to their legislative agents or' representatives. The second is a reserved power; it comprehends all of the sovereign power of legislation not thus delegated. Instinctively the legal mind affirms that the delegated power is to be strictly construed with reference to the purpose for which it is granted. But on the contrary the reserved original power is not to be restricted by any limitations, except such as are imbedded in the federal constitution. This would be a preposterous assumption on the part of this court, *487 exercising judicial authority conferred by the same sovereign. We ■ cannot restrain an agent of the executive department from the exercise of functions within the general scope of the authority conferred by the people on that department of government, unless the act is clearly forbidden by the organic law of the state, especially where the act is merely preparatory to the direct exercise of the sovereign power of the people to legislate for themselves. It is our duty to interpret the language of the constitution according to its fair and reasonable import and the common understanding of the people who framed and adopted it. The clause in question, read in connection with the context, by fair and reasonable construction, does not convey the meaning which the plaintiffs seek to give it by a rigid construction. Therefore their contention can not be sustained.
There is another indisputable and imperative reason why the remedy they invoke must be denied. We can not intervene in the process of legislation and enjoin the proceedings of the legislative department of the state. That department is free to act upon its own judgment of its constitutional powers. We have not even advisory jurisdiction to render opinions upon mooted questions about constitutional limitations of the legislative function, and we will not presume to control the exercise of that function of government by the general assembly, much less by the people, in whom all the power abides. The legislature, having delegated authority, prescribed and limited by the constitution, may exceed its authority by promulgating a law in conflict with the constitu *488 tion. In a clear case of the latter sort, where the void law is .about to be enforced against a citizen to his prejudice, we may enjoin execution of the law, for the protection of the rights of person or property guaranteed by the constitution. This is not such a case; no private rights of person or property are in jeopardy, and there is no law or semblance thereof complained of. We are simply asked to regulate the affairs of another branch of government, in deference to the general welfare, in a matter quite outside and independent of our authority. We are asked to prevent the people from exercising the initiative, upon a quizzical interpretation of a single word in their own letter of authority to their secretary of state. We can not enjoin the sovereign state of Ohio where the people have not in their constitution, clearly beyond reasonable doubt, limited the. exercise of their power to legislate directly by the initiative. Therefore the writ must be refused.

Judgment of the lower court affirmed.

Nichols, C. J., Sliauck, Johnson, Donahue, Wanamaker and Newman, JJ., concur.